No. 4048

Second Circuit

———

DAVID v. COUVILLION

———

(July 14, 1931. Opinion and Decree.)

———

Polk & Robinson, of Alexandria, attorneys for plaintiff, appellant.

Hakenyos, Provosty & Staples, of Alexandria, attorneys for defendant, appellee.

DREW, J. In this case the learned judge of the lower court has written a very exhaustive opinion which clearly sets forth the issues, facts and law applicable thereto. We fully agree with his findings and therefore adopt the written opinion of the lower court as the opinion of this court. It is as follows:

"This is an action to establish the boundary line between the property of plaintiff and that of defendant, the allegation of plaintiff's petition being that the boundary between plaintiff and defendant 'has never been fixed, established or determined, or if ever fixed—was wrongfully fixed—and is no longer to be seen and is obliterated.'

"Defendant, in answer, denies that the boundary has never been fixed, and alleges that 'there is no cause of this action; that the estates have been separated and the boundary fixed and defined for a period of 45 years; that the boundary is determined, is fixed by innumerable official maps and surveys and the physical evidence thereof still exists * * *.'

"Upon the filing of the suit, plaintiff prayed for and obtained an order for a survey, the court appointing Harvey S. Henning, surveyor and civil engineer, to inspect and examine the premises, survey same, ascertain their limits and boundaries. This being done, the proces verbal filed by the surveyor, the case was called and trial begun, when, in the progress of the trial, it became apparent to the court that there was a conflict between the findings of Mr. Henning and other testimony introduced, especially that of Mr. H. J. Daigre, Parish Surveyor, who had previously, at the request of defendant, examined the premises and made certain measurements and findings, the court of its own motion ordered another survey by a disinterested surveyor, and accordingly appointed Mr. O. F. Reiszner, a competent surveyor of Rapides Parish, to make a survey of the property in order that the court may be able to determine the correct boundary in dispute. Mr. Reiszner made the survey and filed his proces verbal, whereupon the trial was resumed May 7, 1930, the trial having been postponed November 14, 1929, for the additional survey.

"Plaintiff contends that the survey of Mr. Henning correctly establishes the disputed boundary, and asked that it be adopted by the court. Defendant contends that Mr. Reiszner's survey establishes the correct boundary and asks it to be decreed to be the established boundary between the properties.

"Mr. Henning began his work at Riverside Drive, which is next to Red River, which, from certain measurements and calculations, he ascertained the angle between the property lines of 'Riverside Drive and Main Street, which he states was necessary 'to determine the direction of the lines bounding the block containing the property to be surveyed,' since the property from Riverside Drive clear through to the property, line of which is in dispute, is one continuous block. In fact, according to the Sylvester Map of Pineville, the whole property from the Riverside Drive to Harrison Street on northeast of the plaintiff's and defendant's properties constitute one long block, bounded in front by Main Street and in rear by Lakeview Avenue. After Mr. Henning, by his system of measurements, worked out up to intersection with Main Street of the old Johnson-David line, all as is explained by

him in his proces verbal. He then states he ran a line from that point of intersection, out from Main Street, at an angle of 90° 32', his previously determined angle between Main Street and Riverside Drive, and hit a stump center, which he was informed by old citizens was the stump of an old tree which stood on what had been recognized as the property line between Johnson and David. This David spoken of here, however, is not the plaintiff in suit, Robert A. David, nor is what is referred to as property of David any part of the properties, the line of which is in dispute, but is property, or was property, of an ancestor of Robert A. David. The finding of this old stump led Mr. Henning to believe more strongly that his survey was correct up to that point.

"Having located what he believed to be the old Johnson-David line, Mr. Henning used the measurement indicated in the old Bringhurst 1860 Map, recorded in Conveyance Book 'B', page 397, copy of which is in evidence (Exhibit 'D', attached to the Reiszner survey), which shows a front of 151 feet along Main Street; while the plat shows 151 feet, Mr. Bringhurst, in his written declaration accompanying the plat, says, 'This lot whose front is supposed to be (151 feet), one hundred fifty-one feet, has a depth of one arpent, bounded on the northeast by lot belonging to Mrs. Schrouder, on the Southeast by lands of Escophia Succession, on the southwest by lot belonging to Mr. Johnson * * *'. Mention is here made of this description in connection with the plat for the reason that both Mr. Daigre and Mr. Reiszner give it as their opinion that this statement of 151 feet on the Bringhurst plat must be erroneous. Also, the W. H. Sylvester official map of the Town of Pineville (Exhibit 'C' attached to the Reiszner survey), made in 1903, gives this Bringhurst line as being only 76.5 plus 60, or 137.5 feet. This is the space intervening between the Johnson property and Schrader (or Hardtner) property. Mr. Henning, however, taking the 151 measurement as being true and correct, ran that distance and establishes what he considers as the David-Schrader (or Hardtner) line, constituting the southwest corner of Robert A. David's lot, thence continues 60 feet to the intersection of the disputed line with Main Street, being point '1' in ink on his Exhibit 'A' attached to his proces verbal. With that 60 feet front on Main Street, he projects parallel lines back 339 feet to Lake View Avenue, thus embracing the property of Robert A. David. This outer line, beginning at figure '1' on Exhibit 'A', is what Mr. Henning finds and determines to be the disputed line between plaintiff's and defendant's properties. He notes in conclusion that this line checks correctly with the survey by Bringhurst as indicated by his plat. He also says it checks 'according to distance with the survey of Sylvester', and that he finds that the building erected by defendant encroaches ten feet on the front and 11.87 feet on the back, upon David's property. Mr. Henning runs these two lines back parallel for the reason that the description of the property as acquired by plaintiff from his vendor, James I. Bradford, recites that these lines run back parallel to each other.

"Mr. Robert A. David, plaintiff, in his testimony, says, (page 8 et seq.): 'There is no fixed line' between him and defendant, Mr. Couvillion, not as he knows of and he does not think it is. When asked:

"'Q. Is there any evidence there showing the location of this line and where it should be?

"'A. No.

"'Q. Has there ever been to your knowledge a fixing or determination or establishment of this line, either by consent or by judicial survey?

"'A. No.

"'Q. And there are no physical evidences of the location of this line at this time?

"'A. Not as I know of.

"'Q. If they were there, you would know it?

"'A. Yes, sir.'

"It would, therefore, seem that no physical boundary line had been fixed between plaintiff and defendant.

"Going back to the Johnson-David line and the David-Schrader line, and Mr. Bringhurst's plat showing 151 feet between the two lines, as forming the basis from which Mr. Henning finally determines the line

·in dispute between plaintiff and defendant, the attention of the court is now directed to the testimony of Mr. Daigre and Mr. Reiszner. In the first place, Mr. Daigre testifies that he has been familiar for many years, in fact from his boyhood, ·with the actual physical Johnson-David line, also the David-Schrader line; that in his opinion, quoting:

" 'I have very grave doubts about the Johnson line, what I call the Johnson line and where the fence has existed for the last forty-five (45) years, is the same line that Mr. Bringhurst established when ·he measured one hundred and fifty-one (151) feet. (See page 110 et seq.) * * *

" 'I believe he (Mr. Bringhurst) measured a little over that fence, and Johnson ignored it. There is nothing to show that Johnson accepted it and it is over in the Johnson property. I say that because I know intimately where the Hardtner line was and I have measured it and found it there. There is not enough distance existing in what Willie Sylvester's map shows and the survey I have made myself.

" 'Mr. Sylvester's plat, and the line that exists to my knowledge is the same. The Henning plat comes to the same place, but I do not believe that the one hundred and fifty-one (151) feet measured by Mr. Bringhurst in 1869, is that same place, or if he measured from the Hardtner line, as I know it and have known it for forty-five years. In other words, there is not one hundred and fifty-one feet between the Hardtner line as I knew it and the Johnson line as I have known it for the last forty-five years.'

"Mr. Daigre is then asked:

" 'Q. He started from what was always known as David-Schrader line and measured one hundred and fifty-one (151) feet south, but that Johnson never accepted that, and Johnson's fence and line has always remained where it was, regardless of the one hundred and fifty-one (151) feet measured south by Bringhurst in 1869?

" 'A. Yes, sir, that is the conclusion I came to, and I cannot see how it could be otherwise.'

"Mr. Daigre's belief is that when Mr. Henning accepted the 151 feet shown on the Bringhurst map and measured accordingly, he was in error,· because the distance as represented by those figures was ·not in fact 151 feet, but a less number of feet. Then he goes on to give his reasons from personal knowledge of these lines through a long period of time.

"Mr. Reiszner came to the same conclusion in his survey and is in agreement with Mr. Daigre's opinion. He states (p. 135, et seq.) he checked his distances from Harrison Street according to Sylvester's official map of Pineville, checking, as he states, clear through to Riverside Drive on Red River, using the Sylvester Map, also evidences of improvements on the general lot lines, also had abstracts of title to the Hardtner (Schrader) property, and the old J. David property adjoining it on the southwest. ·At page 139 of the testimony, Mr. Reiszner is asked:

" 'Q. I take it from your proces verbal, and particularly the Sixth Paragraph on page 2, with reference to Exhibit "D", that you didn't accept that distance of one hundred and fifty-one (151) feet between the David and Johnson line as shown on that plat?

" 'A. No, because it was in conflict with everything else.

" 'Q. In other words, that distance did not check with any other distance in your survey?

" 'A. Yes. Now, I might state further that on that plat, there is nothing to show that the one hundred and fifty-one feet, measured to the Johnson line was acquiesced in by Johnson. There is no evidence that the present Johnson line and this distance of 151 feet from point "A", is the same. Absolutely no support in evidence that they are the same.

" 'Q. By that, you mean what?

" 'A. There are a great many things we might take as evidence. Measuring 151 feet from the Johnson line you don't strike any line, and taking and adding that other dimensions of other purchasers, you don't any of the other lines up there.'

"In his proces verbal, Mr. Reiszner (see last page) says that having reached this conclusion, he fixed the point of intersection of David-Hardtner (Schrader) line

and the lower line of Main Street in accordance with the Sylvester Map, and from that point he measured the 60 feet front of the property of plaintiff.

"Mr. Reiszner then states in his proces verbal, quoting:

" 'Exact literal compliance with the description in deed of Hardtner to Andrews and Fenstermaker is impossible.'

"Then he says:

" 'My interpretation of the intent of this description and that in which there would be the least conflict is as follows:

" 'A lot fronting on Main Street, 90 feet wide and extending back between parallel lines at right angles to Main Street, and a lot fronting on Lakeview Avenue, being a strip 67.5 feet wide off the east side of Lot 3 of the division of the Pouissin Estate.'

"He then says: 'This interpretation was concurred in by Mr. S. Henning, C. E., and H. J. Daigre, Parish Surveyor.' Then, finishing the description, he says: 'I then extend the disputed line through to Lake View Avenue in accordance with the above interpretation, marking the points A-B-C-D with iron stakes. (See Exhibit "B").'

"Going back to the question as to whether Mr. Henning's survey, or that of Mr. Reiszner, was and is the correct fixing and determination of this disputed boundary line, the court, having considered the testimony on both sides of this question, is of the opinion that the testimony preponderates in favor of the latter, that of Mr. Reiszner. Mr. Daigre who is Parish Surveyor and is competent and experienced, and in addition, he is and has been for the past forty-five years thoroughly familiar with the old physical property lines—that of Johnson-David and the David-Hardtner (or Schrader) lines, taken in connection with the very strong probability that the 151 feet shown on the Bringhurst map does not correctly represent the actual distance intervening between the Johnson property and the Schrader property, and the fact that there is no indication that Johnson ever acquiesced in the Bringhurst's survey, was not a party to it, that coupled with Mr. Reiszner's findings and views, and that of Mr. Sylvester's official survey and map of the Town of Pineville—all these facts and circumstances would seem to outweigh Mr. Henning's version of the matter.

"Now, regarding the interpretation Mr. Reiszner places upon the wording of the descriptions in both plaintiff's and defendant's deeds, as being the intent of the parties, wherein in the plaintiff's deed it recites the lines run back parallel, and in defendant's deed it recites as to one of the lines that it runs back a certain distance to Lakeview Avenue, whereas Mr. Reiszner's description indicates an offset in the lines, it can be said, as Mr. Daigre explains these lines can have an offset at some point and still be lines parallel to each other, thereby fulfilling the wording in the deed. In defendant's deed there is shown an offset in the line returning from Lakeview Avenue to Main Street, and it is quite possible and probable that the parties had in mind describing an offset in the line running from Main Street over to Lakeview Avenue and by oversight the description of the offset was left out. At any rate, to make these lines conform to lines of other lots shown on the Sylvester Map, wherein offsets are shown and which seem to be the general scheme of descriptions of all of the lots adjacent to and near those of plaintiff and defendant, it is highly probable that offsets were intended to be shown in the lines of these properties. Also, this interpretation, according to Mr. Reiszner's proces verbal, was concurred in by Mr. Henning as well as Mr. Daigre. So, this being true, the court sees no reason why such interpretation should not be adopted by the court, and therefore the court adopts same.

"In accord with the views above expressed, the court is of the opinion that the survey of Mr. Reiszner should be adopted, and the line established by him as being the line dividing the properties of plaintiff and defendant is the true and correct line of division, same being the line indicated by the letters A, B, C, D on Exhibit 'B' attached to and accompanying the proces verbal of Mr. Reiszner in this case, and let there be judgment accordingly.

"The cost of this case is ordered to be paid by both parties in equal amounts."

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed.